UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSWAR RODRIGUEZ TORRES,<br><br>                Petitioner,<br><br>   v.<br><br>KRISTI NOEM et al,<br><br>                Respondents. | CASE NO. C25-2697JLR<br><br>ORDER |

## I.    INTRODUCTION

Before the court is Petitioner Joswar Rodriguez Torres's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 and request for injunctive relief. (Pet. (Dkt. # 1); Reply (Dkt. # 9).) Respondents United States Department of Homeland Security ("DHS") Secretary Kristi Noem, Acting Director of United States Citizenship and Immigration Services ("USCIS") Todd Lyons, and Acting Director of the Seattle Field Office of United States Immigration and Customs Enforcement ("ICE") Camilla

Wamsley (together, "Respondents") oppose the petition. (Resp. (Dkt. # 6).) The court has considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS Mr. Torres's petition.

## II. BACKGROUND

Mr. Torres is a citizen of Venezuela presently detained at the Northwest ICE Processing Center in Tacoma, Washington. (Pet. ¶ 5.) Mr. Torres initially sought entry into the United States on September 6, 2024, at the Hildago, Texas Port of Entry. (Dumo Decl. (Dkt. # 7) ¶ 4.) Later that same day, DHS (1) issued Mr. Torres a Notice to Appear at immigration court proceedings charging him as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), (*id.* ¶¶ 56; *see also* Lambert Decl. (Dkt. # 8), Ex. A (Notice To Appear)) and (2) granted Mr. Torres paroled entry to the United States, (*see* Pet, Ex. A (Form I-94)). After his paroled entry, DHS placed Mr. Torres into non-detained removal proceedings pursuant to 8 U.S.C. § 1229a. (Pet. ¶ 16.) On April 14, 2025, Mr. Torres filed a timely application for asylum and withholding of removal with the Seattle Immigration Court. (*Id.*, Ex. B (Form I-589).) On June 11, 2025, ICE detained Mr. Torres at a routine check-in at the agency's field office in Spokane, Washington. (Dumo Decl. ¶ 6; *see also* Lambert Decl., Ex. B (Record of Inadmissible Alien).) On October 8, 2025, the Tacoma Immigration Court denied Mr. Torres's petition for asylum and ordered him removed to Venezuela. (*See* Pet. ¶ 2; *see also* Dumo Decl., ¶ 7; Lambert Decl., Ex. E (Order of the Immigration Judge).) On November 5, 2025, Mr. Torres timely appealed the denial of his asylum petition, an action which remains pending at this time. (*See* Pet., Ex. E (Notice of Appeal); Dumo Decl. ¶ 7.) Mr. Torres has no criminal

history in the United States and represents that he has "diligently complied with all conditions ICE imposed upon him as a parolee." (Pet. ¶ 20; *see also* Record of Inadmissible Alien at 4.)

On December 24, 2025, Mr. Torres filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet.) He asserts that his immigration detention violates the Administrative Procedure Act ("APA") 5 U.S.C. § 706(2)(A); relevant portions of the Immigration and Nationality Act ("INA") and its regulations; and the Fifth Amendment's Due Process Clause and right to counsel. (*See generally* Pet.) Mr. Torres's petition is now fully briefed and ripe for the court's consideration.

### III.    ANALYSIS

The court first considers the legal standard for detention of noncitizens during immigration proceedings and then turns to the parties' arguments concerning the present immigration habeas petition.

**A.  Legal Standard for Detention of a Noncitizen During Immigration Proceedings.**

The INA permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Although § 1225(b) requires mandatory detention for certain noncitizens "seeking entry" into the United States, *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018), all persons, regardless of their immigration status, are entitled to due process under the Fifth Amendment, *see also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence

here is lawful, unlawful, temporary, or permanent."). Thus, even when the government believes it has a lawful basis for detaining a noncitizen, it remains subject to the requirement to effectuate that detention in a manner that comports with due process. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320 (W.D. Wash. 2025) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.") (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).

The Parole Statute provides the Secretary of Homeland Security with discretion to grant parole on a case-by-case basis for "urgent humanitarian reasons or significant public benefit [.]" 8 U.S.C. § 1182(d)(5)(A). When the Secretary grants a noncitizen entry to the United States on parole, such:

> [r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal.

*Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

DHS's decision to revoke a noncitizen's parole under § 1182(d)(5)(A) must be made on an individualized basis and carried out only after the purposes of the parole have been served. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1138 (D. Or. 2025) ("Common sense suggests . . . that parole given only on a case-by-case basis is to be terminated only on such a basis.") (citation omitted); *see also* 8 U.S.C. § 1182(d)(5)(A)

1  (stating that once parole is granted, the DHS may only terminate parole "when the
2  purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have
3  been served").

4        When noncitizens challenge administrative action to revoke their parole or
5  otherwise re-detain them, courts provide judicial review of such decisions pursuant to
6  their authority to review "[a]gency actions made reviewable by statute and final agency
7  action for which there is no other adequate remedy[.]" 5 U.S.C. § 704; *see Norton v. S.*
8  *Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) (discussing "what limits the APA places
9  upon judicial review"). Reviewable agency action includes "the whole or part of an
10  agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure
11  to act." *See* 5 U.S.C. § 551(13). Agency action is deemed final if it (1) "impose[s] an
12  obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the
13  administrative process[,]" *Chicago & S. Air Lines v. Waterman S. S. Corp.*, 333 U.S. 103,
14  113 (1948) (citation omitted), and (2) is an action "by which 'rights or obligations have
15  been determined,' or from which 'legal consequences will flow,'" *Bennett v. Spear*, 520
16  U.S. 154, 178 (1997) (citation omitted). Thus, DHS's revocation of the release of a
17  noncitizen previously granted parole is reviewable under the APA because it denies the
18  noncitizen's right to liberty and is an action from which rights have been determined.

19        Under the APA, the court must set aside agency action if it is "'arbitrary,
20  capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Kazarian*
21  *v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1118 (9th Cir. 2010) (quoting
22  5 U.S.C. § 706(2)(A)). "[T]he agency must examine the relevant data and articulate a

satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).

**B.     DHS's re-detention of Mr. Torres is unlawful.**

Mr. Torres argues, in pertinent part, that revocation of his parole is unlawful because Respondents (1) brought Mr. Torres into federal custody without adequate consideration of the individualized facts and circumstances, including the absence of changes that justify revocation of his parole, and (2) re-detained him without the "lawful authority" of persons authorized to revoke his release, both of which violate his rights under the APA and the Fifth Amendment.  (Pet. ¶¶ 33-53.)  Respondents counter that (1) Mr. Torres is lawfully detained pursuant to 8 U.S.C. § 1225(b), and (2) the court lacks subject matter jurisdiction to hear Mr. Torres's APA claims.  (Resp. at 3-5.)  The court agrees with Mr. Torres.

1.     <u>The court has jurisdiction to consider Mr. Torres's APA claims.</u>

As a threshold issue, Respondents challenge the court's jurisdiction to consider Mr. Torres's APA claims purportedly because the habeas petition is not "inadequate for the purposes of the APA[.]"  (*See* Resp. at 5 (cleaned up).)  The court rejects Respondents' narrow reading of the APA.  Pursuant to § 1252(b)(9), Congress explicitly authorized judicial review of final orders concerning "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" for noncitizen detainees such as Mr. Torres.  8 U.S.C. § 1252(b)(9).

Notably, Mr. Torres is not challenging DHS's decision to adjudicate his removability or commence removal proceedings. (*See generally* Pet.) Rather, he is challenging the constitutionality of his custody in the manner directed by 8 U.S.C § 1252(b)(9) – a petition to the appropriate court that includes the consolidated reasons that his detention is purportedly unlawful. *See also Gonzalez v. United States Immigr. and Customs Enf't.*, 975 F.3d 788, 810 (9th Cir. 2020) ("The Supreme Court has since instructed that § 1252(b)(9) is a 'targeted' and 'narrow' provision that 'is certainly not a bar where, as here, the parties are not challenging any removal proceedings.'") (citing *Dep't of Homeland Sec. v. Regents of Univ. of California*, 591 U.S. 1, 19 (2020)). Thus, the court has jurisdiction to consider Mr. Torres's APA claims.

    2. <u>DHS's decision to re-detain Mr. Torres violated the APA.</u>

  Mr. Torres first argues that Respondents abused their discretion, and violated the APA, because they failed to consider Mr. Torres's individualized facts and circumstances before revoking his freedom and bringing him into federal custody. (*See* Pet. ¶ 37.) The court agrees with Mr. Torres. Here, Respondents do not contest that they failed to considered Mr. Torres's individualized facts and circumstances before deciding to re-detain him. (*See generally* Resp. (arguing only that Mr. Torres is subject to mandatory detention and that the court lacks subject matter jurisdiction over his APA claims).) Thus, the court concludes that DHS's decision to re-detain Mr. Torres (1) constitutes an abuse of DHS's discretion, and (2) violates the APA's prohibition on agency action that is "not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Consequently, the court sets

aside DHS's decision to revoke Mr. Torres's parole as effectuated by his detention on June 12, 2025. (*See* Pet. ¶ 19.)

        3.  <u>DHS's decision to re-detain Mr. Torres violated the Fifth Amendment.</u>

Next, Mr. Torres argues that Respondents' decision to re-detain him violates the Fifth Amendment's Due Process Clause. (*Pet*. ¶¶ 40-45.) Again, the court agrees with Mr. Torres. It is undisputed that Respondents revoked Mr. Torres's release "not by the individual exercise of discretion required by law or the persons enumerated by regulation to do so." (*See* Pet. ¶ 44; *see generally* Resp.) Nor do Respondents assert that they revoked Mr. Torres's release because the DHS Secretary determined that the purposes of the parole have been served or that subsequent changes justify Mr. Torres's re-detention. (*See generally* Resp.) By effectuating Mr. Torres's re-detention in such a manner, DHS failed to provide him with the minimum process due. Thus, Respondents' decision to re-detain Mr. Torres violated Mr. Torres's rights under the Fifth Amendment's Due Process Clause.

In response, Respondents argue that because Mr. Torres is subject to mandatory detention under § 1225(b), his re-detention is lawful. (*See Resp*. at 3-5.) The court rejects this argument. Regardless of the reason for Mr. Torres's detention, Respondents remain subject to an obligation to "effectuate [his] detention in a manner that comports with due process." *See E.A. T.-B.*, 795 F. Supp. 3d at 1322.

**C.  Mr. Torres's claim for violation of the Fifth Amendment's right to counsel is not cognizable in a habeas petition.**

In addition to asserting that his re-detention is unlawful, Mr. Torres brings a claim for violation of the Fifth Amendment's right to counsel.  (*See* Pet. ¶¶ 54-56).  Although a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of Mr. Torres's re-detention and revocation of parole, it is not the appropriate mechanism to bring claims that are speculative or otherwise not ripe for review.  ( 28 U.S.C. § 2241(c)(3); *see* Pet. ¶¶ 54, 56 (asserting that "[u]pon information and belief, [DHS] may intend to move [Mr. Torres] to a remote facility far from Tacoma" and that such a transfer would violate the Fifth Amendment's right to counsel); *see also Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985) (holding that the basic rationale of the ripeness doctrine is to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements") (internal quotation marks omitted); *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (holding that district courts properly decline to issue advisory opinions or to declare rights in hypothetical cases rather than live cases or controversies).  Because this claim cannot be the basis for habeas relief, the court declines to consider it at this time.

**D.  Mr. Torres's Request for Attorneys' Fees and Costs.**

Mr. Torres should file a fee petition as set forth in the Equal Access to Justice Act, 28 U.S.C. § 2412.

## IV.  CONCLUSION

For the reasons set forth above, the court GRANTS Mr. Torres's petition (Dkt. # 1) and, finding Mr. Torres is entitled to immediate release from custody, ORDERS that a Writ shall issue.  The court DIRECTS Mr. Torres to file as soon as possible a proposed Writ of Habeas Corpus and to email a Word version to robartorders@wawd.uscourts.gov.

Dated this 29th day of January, 2026.

JAMES L. ROBART
United States District Judge